IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE KACER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-cv-00768-RAH |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

### **Introduction**

Plaintiff Steve Kacer, proceeding pro se, brings this action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), arising from a $12,000.00 wire transfer that Kacer initiated and authorized with Wells Fargo in November 2024. Kacer alleges that he was searching on Facebook for a vehicle to purchase and located a seller offering a car and truck for $12,000.00. Then, on November 12, 2024, Kacer visited his local Wells Fargo branch, where a branch manager assisted him with completing the wire transfer via Kacer's mobile phone. Kacer then personally authorized and executed the wire transfer to a Chase Bank account held by the Facebook seller, who, as Kacer later discovered, was a scammer.

After authorizing the transfer, Kacer realized he may have been defrauded and attempted to stop the wire by contacting Wells Fargo. Wells Fargo informed Kacer that the transfer could not be cancelled and that it was too late to reverse the payment. Kacer filed a dispute, which Wells Fargo investigated over a period of 7 to 10 business days before concluding that nothing could be done.

Kacer then filed this lawsuit, claiming that Wells Fargo never warned him of the risk of wire fraud, never provided required disclosures regarding his rights under federal law, and failed to recover his funds from the scammer. Kacer's Complaint sets forth several numbered counts. Count I alleges that Wells Fargo facilitated the scam and failed to warn Kacer of the risk of fraud with the purported transaction. Count II alleges a failure to disclose the terms and conditions of Wells Fargo's wire transfer services. Counts III through VI allege various violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq., including failures to provide consumer liability disclosures, stop-payment rights, liability summaries, and annual error resolution notices. Kacer seeks compensatory damages.

Wells Fargo has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted.[1] Kacer timely filed a response in opposition. The motion is now ripe for decision.

## **Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation omitted).

---

[1] Wells Fargo also argues that the Complaint constitutes an improper shotgun pleading. While true, the Court elects to proceed under Wells Fargo's alternative argument that the Complaint fails to state a claim.

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "A pleading that offers mere 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Although pro se pleadings are held to a less stringent standard than those filed by attorneys, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), pro se litigants remain bound by the Federal Rules of Civil Procedure. *B.I. v. Montgomery Cnty. Bd. of Educ.*, 750 F. Supp. 2d 1280, 1282 (M.D. Ala. 2010). The Court's obligation to construe pro se pleadings liberally does not extend to fabricating claims or supplying essential elements not alleged. *See Nalco Co. v. Bonday*, 142 F.4th 1336, 1341 (11th Cir. 2025).

## Discussion

### A. Negligence/Aiding and Abetting Fraud (Count I)

Count I of the Complaint alleges, in substance, that Wells Fargo "never warned [Kacer] of the danger of a potential scam but helped [Kacer] to carry out the potential scam and didn't help to get [Kacer's] money back." The Court construes this count liberally as attempting to assert claims for either negligence or aiding and abetting fraud. Both theories fail as a matter of law.

To state a negligence claim under Alabama law, a plaintiff must allege the existence of a duty, a breach of that duty, causation, and damages. *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001). Whether a duty exists is a question of law. *Rosenthal v. JRHBW Realty, Inc.*, 303 So. 3d 1172, 1182 (Ala. 2020). A legal duty to warn arises only where potential harm is reasonably foreseeable. *Patrick v. Union State Bank*, 681 So. 2d 1364, 1369 (Ala. 1996).

3

Alabama law is clear that the relationship between a bank and its depositor is ordinarily that of debtor and creditor, not a fiduciary. *Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 290 (Ala. 2003); *K & C Dev. Corp. v. AmSouth Bank, N.A.*, 597 So. 2d 671, 675 (Ala. 1992). Although Alabama courts have recognized that a bank may owe a fiduciary duty to protect its depositors from a third party's wrongdoing in narrow, special circumstances, that duty arises only where the type of harm threatened is "reasonably foreseeable." *Patrick*, 681 So. 2d at 1369–70; *see also Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 857 (Ala. 2002). Foreseeability requires more than the abstract possibility that a seller of a good or service might be fraudulent; it requires facts placing the bank on notice that *this* transaction posed a reasonably foreseeable risk of harm to *this* depositor.

The Complaint does not allege any such facts. Kacer does not allege, for example, that he told the branch manager that he was buying vehicles sight-unseen from a Facebook seller, that the seller was unknown to him, or that the seller refused to meet in person. To the contrary, Kacer alleges that when he asked the branch manager what he was doing, "she didn't even look at it," and merely showed him "step by step instructions on how to [send the wire] over [his] phone." (Doc 1-1 at 3–4.) On those allegations, Wells Fargo had no factual basis from which they could foresee, above what Kacer himself could foresee, that Kacer's $12,000.00 wire was anything other than a routine, customer-initiated payment. *See Patrick*, 681 So. 2d at 1370 (no duty where harm was not reasonably foreseeable from the facts known to the bank).

In his opposition brief, Kacer attempts to fill this gap by asserting that he "specifically informed Wells Fargo's branch manager that he was wiring funds to an unfamiliar seller for a vehicle purchase" and that this disclosure, "combined with the suspicious nature of the transaction," triggered a duty to warn. (Doc. 7 at 2.) The Court rejects this argument for two reasons.

4

First, the new factual assertions in Kacer's opposition brief are not in the Complaint, and "plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citation omitted); *see also Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011). In its analysis, the Court is confined to the four corners of the Complaint. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).

Second, even if Kacer had pleaded those facts, they would not have been sufficient to create a duty to warn by Wells Fargo under Alabama law. The mere disclosure that a depositor wants to wire money to an unknown seller to buy a vehicle does not, without more, place a bank on notice that the transaction may be fraudulent. Online sales between a private seller and buyer, funded by a wire transfer initiated by the buyer are commonplace in this digital society. A bank confronted with such a request by a depositor, who presumably already has conducted enough due diligence to satisfy himself to pursue the purchase transaction, has no way to distinguish, on the face of the request, the legitimacy of the transaction from an illegitimate one. *See El Camino Res., LTD v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 928 (W.D. Mich. 2010) ("If the law were otherwise, every bank would be an aider and abettor of every fraudulent customer, merely on the theory that the customer needed access to bank accounts to accomplish the fraud."), *aff'd*, 712 F.3d 917 (6th Cir. 2013).  Given the current state of Alabama law, the Court does not see how Alabama would impose a duty here.

Other courts have reached similar conclusions under similar fact situations—a customer-initiated wire to purchase goods from an online seller who turns out to be a scammer. *See, e.g., McCarthy v. JP Morgan Chase Bank*, 772 F. Supp. 3d 298, 315 (E.D.N.Y. 2025) (dismissing negligence claim against bank for customer's authorized wire to scammer); *Liu v. Bank of Am., N.A.*, 804 F. Supp. 3d 1037, 1046–

47 (N.D. Cal. 2025) (same); *Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*, 548 F. Supp. 3d 546, 552–53 (W.D.N.C. 2021). The negligence claim therefore is due to be dismissed.

As for aiding and abetting fraud, Alabama does not recognize such a civil cause of action. *Bradley v. Franklin Collection Serv., Inc*., No. 5:10-CV-1537-AKK, 2011 WL 13134961, at \*14 (N.D. Ala. Mar. 24, 2011); *Cont'l Cas. Co. v. Compass Bank*, No. 04-766-KD-C, 2006 WL 566900, at \*11 (S.D. Ala. Mar. 6, 2006). Even in jurisdictions that recognize the claim, a bank does not aid and abet fraud by providing standard banking services. *See Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012); *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014); *Mazzaro de Abreu v. Bank of Am. Corp*., 525 F. Supp. 2d 381, 391 (S.D.N.Y. 2007). Kacer has alleged no facts indicating that Wells Fargo encouraged or assisted the Facebook scammer in making any misrepresentation to Kacer. Accordingly, Count I, to the extent it asserts an aiding and abetting theory, fails to state a claim and is due to be dismissed.

## B. EFTA Disclosure Claims (Counts II–III)

Counts II and III allege that Wells Fargo violated the EFTA by failing to provide Kacer with certain disclosures regarding consumer liability for wire transfers. Wells Fargo moves to dismiss these counts, stating that they do not state claims under the facts as pleaded.

The EFTA requires financial institutions to disclose, among other things, the consumer's liability for unauthorized electronic fund transfers, the right to stop payment of preauthorized transfers, and the institution's own liability. 15 U.S.C. §§ 1693c(a)(1), (5), (8). These disclosure obligations are triggered at the time a consumer opens an account or before the first electronic fund transfer. 12 C.F.R. § 205.7(a).

The threshold deficiency in Kacer's EFTA disclosure claims is that the protections Kacer invokes apply only to *unauthorized* electronic fund transfers. 12 C.F.R. § 205.6(a). The EFTA defines "unauthorized" as a transfer "initiated by a person other than the consumer without actual authority to initiate such transfer." 15 U.S.C. § 1693a(12). Here, the Complaint makes clear that Kacer personally initiated and executed the wire transfer. A transfer a consumer initiates himself, even if motivated by a third-party scam, is not "unauthorized" within the meaning of the EFTA. Accordingly, the disclosure requirements upon which Kacer relies provide no basis for relief.

Further, Kacer's own Complaint concedes that he located Wells Fargo's terms and conditions on the bank's website, undermining his assertion that no disclosures were ever made. The EFTA's disclosure requirement is satisfied when a financial institution provides the required terms at account opening and updates the consumer when terms change. *Acafrao v. U.S. Cent. Bank*, No. 09-21695-CIV, 2010 WL 11596731, at *9 (S.D. Fla. Aug. 9, 2010). Kacer identifies no specific provision that was deficient. Accordingly, Counts II and III are due to be DISMISSED.

## C. Stop-Payment Claims (Counts IV–V)

Counts IV and V allege that Wells Fargo violated the EFTA by failing to honor Kacer's request to stop payment. Wells Fargo seeks dismissal, arguing that no claim is stated upon which relief can be granted because Kacer's wire was a one-time only, preauthorized electronic fund transfer and because Kacer's stop payment notice was made after the transfer had been initiated and had occurred.

Kacer's stop-payment counts rely upon 15 U.S.C. § 1693e and 12 C.F.R. § 205.10(c), which grant consumers the right to stop payment of a "preauthorized electronic fund transfer." Under the EFTA, a "preauthorized electronic fund transfer" is defined as one "authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). And under the EFTA, the consumer must notify

7

the financial institution orally or in writing up to three days preceding the scheduled date of the transfer. 15 U.S.C. § 1693e(a).

The $12,000.00 wire transfer at issue was a single, one-time payment personally initiated by Kacer. It was not a recurring, preauthorized transfer. The statutory stop-payment right therefore does not apply. *See In Re DirectTv Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) (finding that a transfer must be "recurring" for § 1693e to apply); *Okocha v. HSBC Bank USA, N.A.*, No. 08 Civ. 8650, 2010 WL 5122614 (S.D.N.Y. Dec. 14, 2010) (dismissing EFTA § 1693e claim because the preauthorized transfer was not set to occur at recurring intervals). Moreover, Kacer does not allege that he provided notice to Wells Fargo at least three business days before the scheduled transfer date, as required to exercise a stop-payment right under the statute. *See Lundell v. Associated Bank, N.A.*, No. 24-567, 2025 WL 2541040, at \*\*3–4 (D. Minn. July 11, 2025) ("the oral request was made at least three business days before the next scheduled transfer, as required under 15 U.S.C. § 1693e(a)"); *Daugherty v. Fed. Sav. Bank*, No. 1:20-cv-1393, 2021 WK 2046698, at \*5 n.3 (C.D. Ill. May 21, 2021) ("[Plaintiff's] Complaint sufficiently pleads that [Plaintiff] properly exercised her statutory right under the EFTA, 15 U.S.C. § 1693e, to stop payment of Defendant's *preauthorized* electronic fund transfer by notifying Defendant orally at least three business days preceding the scheduled date of such transfer."). Instead, Kacer contacted Wells Fargo only after the transfer had been initiated. Counts IV and V are therefore due to be dismissed.

## D. Error Resolution Notice Claim (Count VI)

Kacer's final EFTA claim alleges that Wells Fargo failed to provide him with an annual error resolution notice as required by 12 C.F.R. § 1005.8. Wells Fargo seeks dismissal of this claim because there was no error, in that Kacer authorized the transfer.

Under the EFTA, the error resolution process is triggered only when an "error" has occurred, which includes unauthorized transfers, incorrect transfers, or transfers omitted from a periodic statement. 15 U.S.C. § 1693f(f). Kacer contends that the transfer qualifies as an "error" under 15 U.S.C. § 1693f(f)(1) because it resulted from "inaccurate or misleading information provided by the institution." This argument is unavailing. Kacer does not allege that the branch manager gave him incorrect wire transfer instructions or that a bank system malfunction contributed to the transfer. The manager's assistance in showing Kacer how to operate the mobile wire transfer interface was accurate, with the fraud originating entirely with the Facebook seller. Providing accurate instructions for a legitimate banking service does not constitute misleading information within the meaning of the statute or regulation.

Because Kacer personally authorized the $12,000.00 wire transfer, that transfer does not constitute an "error" under the statute. A transaction does not become an EFTA "error" merely because a consumer later determines it was part of a fraudulent scheme. *Merisier v. Bank of Am., N.A.*, 688 F.3d 1203, 1210 (11th Cir. 2012). For these reasons, Count VI is due to be dismissed.

### E. Leave to Amend

Although courts generally afford pro se plaintiffs an opportunity to amend before dismissal with prejudice, amendment is not required where it would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). The central, dispositive fact in this case—that Kacer personally authorized and instituted the one-time wire transfer—is unambiguous from the face of the Complaint and is fatal to each of Kacer's federal and state law claims. No amendment can alter the nature of that transaction. Accordingly, the dismissal will be with prejudice as to all counts.[2]

---

[2] The Court is sympathetic to Kacer's situation, but a bank is in no better position to gauge the legitimacy of an on-line transaction than the customer himself who is armed with more information

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED** as follows:

1.    Defendant Wells Fargo Bank, N.A.'s *Motion to Dismiss* (Doc. 5) is **GRANTED**;

2.    Plaintiff Steve Kacer's Complaint is **DISMISSED WITH PREJUDICE**;

3.    The Clerk of Court is directed to close this case; and,

4.    A separate judgment will issue.

**DONE** and **ORDERED** on this the 10th day of June 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

about a sale transaction than a bank. After all, it is the customer who located the seller, communicated with the seller, and made the decision to proceed with the sale transaction before the customer's first contact with his bank.